**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRITECH SOFTWARE SYSTEMS, a California corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>U.S. SPECIALTY INSURANCE COMPANY, a Texas corporation,<br><br>        Defendant. | Case No. CV10-00094-R (VBKx)<br><br>FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

After considering the papers in support of and in opposition to Defendant U.S. Specialty Insurance Company's ("USSIC" or "Defendant") Motion for Summary Judgment, the Court determines that the following facts have been established as uncontroverted:

   1.   USSIC issued Directors, Officers and Organization Liability Insurance Policy No. 14-MGU-07-A14426 to TriTech Software Systems, Inc. ("TriTech") for the May 1, 2007 to May 1, 2008 Policy Period (the "Policy"). Lilly Ex. A (Policy)

at 3, Declarations.

2. Subject to all other terms and conditions, Insuring Agreement (B) provides that USSIC "will pay to or on behalf of the Insured Organization Loss arising from Claims first made against it during the Policy Period . . . for Wrongful Acts." Lilly Ex. A (Policy) at 5, Insuring Agreement (B).

3. TriTech is an "Insured Organization" under the Policy. Lilly Ex. A (Policy) at 39, End. No. 16.

4. The Policy defines "Loss" in part to mean:

Defense Costs and any damages, settlements, judgments, back pay awards and front pay awards or other amounts . . . that an Insured is legally obligated to pay as a result of any Claim; provided, that Loss will not include (1) wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed; (2) severance pay or other amounts pursuant to an express contract of employment or an express obligation to make such payments in the event of termination of employment . . . Lilly Ex. A (Policy) at 7, Definition (J).

5. Exclusion (F) in the Policy, the "Insured v. Insured exclusion," bars coverage for "Loss in connection with a Claim . . . brought by or on behalf of, or in the name or right of . . . any Insured Person," except with respect to certain specific Claims including:

• a Claim "for an actual or alleged Employment Practices Wrongful Act," defined as any actual or alleged Discrimination, Retaliation, Sexual Harassment, Workplace Harassment, Workplace Tort, Wrongful Termination, or Violation of the Family and Medical Leave Act;

• a "Former Executive Claim," defined as "a Claim brought and maintained by an Insured Person who has not served as a director, officer, managing member or manager (or functional equivalent) of the Insured Organization for at least two years prior to such Claim being first made; and

• an "Employee Shareholder Claim," defined as "a Claim brought and

maintained by an Employee, other than any past or present director, officer, managing member or manager (or functional equivalent) of the Insured Organization, solely to enforce his or her rights as a holder of securities issued by the Insured Organization." Lilly Ex. A (Policy) at 9-10, Exclusion (F); id. at 6, Definition (F); id. at 32, End. No. 10; id. at 26, End. No. 5.

6. Exclusion (L) in the Policy, the "FLSA exclusion," bars coverage for:

Loss in connection with a Claim . . . for any actual or alleged violation of any provision of the Fair Labor Standards Act other than the Equal Pay Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security or disability benefits law or any amendments thereto, or any other similar provisions of any federal, state or local statutory or common law or any rules and regulations promulgated under any of the foregoing; provided, that this EXCLUSION (L) shall not apply to any Claim for any actual or alleged Retaliation.

Lilly Ex. A (Policy) at 9, 11, Exclusion (L).

7. In October 2007, TriTech received a demand letter sent on behalf of Bruce Sims (the "Sims Demand"). Lilly Ex. B (Sims Demand) at 46-48.

8. The Sims Demand is a "Claim" as defined by the Policy. Lilly Ex. A (Policy) at 23, Definition (B) as am. by End. No. 2.

9. Sims, a former technical services engineer at TriTech, is an "Insured" as defined by the Policy. Bailey Ex. J (TriTech Interrogatory Resp.) at 6-7; Lilly Ex. A (Policy) at 6-7, Definitions (E), (G), (I).

10. The Sims Demand asserted that Sims "worked numerous hours of overtime for which he was not paid," "was not provided an adequate pay stub as required by Cal. Labor Code § 226," and "was not provided an ample meal period or break periods as required under California law." Lilly Ex. B (Sims Demand) at 46.

11. The Sims Demand stated that Sims would sue TriTech unless it

immediately remitted his unpaid overtime, liquidated damages in the same amount, one hour's pay for each missed meal or rest break, statutory penalties for failing to provide adequate pay stubs, and statutory penalties for failing to pay wages promptly upon the end of Sims' employment with TriTech. Lilly Ex. B (Sims Demand) at 46-47.

12. TriTech sought coverage from USSIC for the Sims Demand. Lilly Ex. C (Letter) at 49-53.

13. USSIC denied coverage for the Sims Demand, citing the Insured v. Insured exclusion, the FLSA exclusion and the definition of "Loss." Lilly Ex. D (Letter) at 54-57.

14. On January 2, 2008, Sims filed suit against TriTech in the California Superior Court in San Diego County (the "Sims Action"). Bailey Ex. K (Sims Compl.) at 8-24.

15. The Sims Action Complaint (the "Sims Complaint") alleged the same matters as the Sims Demand: failures to pay overtime, to provide meal and rest breaks, to provide proper pay stubs, and to pay wages promptly upon termination. Bailey Ex. K (Sims Compl.) at 8-24.

16. The Sims Action and Sims Demand (collectively, the "Sims Claim") are part of the same "Claim" under the Policy. Lilly Ex. A (Policy) at 15, Condition (C).

17. The Sims Complaint alleged nine causes of action. Bailey Ex. K (Sims Compl.) at 8-24.

18. In the first five causes of action alleged in the Sims Complaint, Sims sought the following relief on his own behalf and putatively on behalf of a class including certain software engineers at TriTech:

(1) unpaid overtime, penalties, interest and attorneys' fees, on account of TriTech's failure to pay overtime;

(2) one hour of pay for each meal period that was not provided;

(3) damages for failing to provide pay stubs listing the number of hours worked, pursuant to Cal. Labor Code ("CLC") §§ 226(e) and (g);

(4) "waiting time penalties" under CLC § 203 for failing to pay employees all wages due promptly upon the termination of their employment; and

(5) restitution on account of TriTech's failing to pay overtime and thus employing an unfair business practice under California Business & Professions Code § 17200. Bailey Ex. K (Sims Compl.) at 9-17.

19. In the last four causes of action alleged in the Sims Complaint, Sims pursued private attorney general claims to recover penalties and attorneys' fees for TriTech's alleged failures to: (6) pay overtime, (7) provide meal and rest breaks, (8) provide pay stubs listing the hourly rates and number of hours worked, and (9) keep records showing the start and stop time of each employee's shifts and meal breaks. Bailey Ex. K (Sims Compl.) at 12-13, 17-19.

20. In a letter dated June 23, 2008, TriTech's coverage counsel sought coverage under the Policy in connection with the Sims Action. Lilly Ex. E (Letter) at 58-79.

21. On June 25, 2008, USSIC noted that the Sims Demand and Sims Action constituted the same Claim, for which USSIC previously had declined coverage. Lilly Ex. F (E-mail) at 80.

22. On July 14, 2008, TriTech disagreed with USSIC's denial of coverage for the Sims Claim. Lilly Ex. G (Letter) at 81-87.

23. On August 4, 2008, USSIC reaffirmed its denial of coverage for the Sims Claim and responded to the arguments in TriTech's July 14 letter. Lilly Ex. H (Letter) at 88-95.

24. On July 23, 2008, TriTech informed USSIC that TriTech would be "initiating settlement discussions with individual plaintiffs in the [Sims Action]" on July 28. Lilly Ex. I (Letter) at 96.

25. In or around late July 2008 or early August 2008, TriTech and Sims

filed a joint stipulation resolving their dispute regarding Sims' request for disclosure of the identities of the putative class members.  Bailey Ex. L (Stipulation) at 25-29.

26. TriTech agreed to provide the putative class members' identities to a third party administrator, who would contact the class members.  The members then would have 30 days to decline to have their identities disclosed to Sims' counsel. Bailey Ex. L (Stipulation) at 25-29.

27. In July and August 2008, TriTech entered into "Receipt[s] for Payment and Release[s] of Claims" and "Receipt[s] for Payment" with current and former employees other than Sims (the "Receipt Agreements").  Bailey Ex. M (Receipt Agreements) at 30-163.

28. Paragraph 2 of each Receipt Agreement stated that TriTech had been sued by one of its former employees for misconduct including:  "inaccurately representing and stating that certain employees were exempt employees instead of non-exempt employees, . . . failing to make back pay awards, failing to properly train and supervise employees to ensure that they took and received adequate meal and rest periods, . . . issuing wage statements with . . . misstatements, [and] conversion . . .".  Bailey Ex. M (Receipt Agreements) at 30-163.

29. Neither the Sims Demand nor the Sims Complaint ever allege that TriTech inaccurately represented or stated that certain employees were exempt instead of non-exempt employees, or that it failed to make "back pay awards," or that it failed to properly train and supervise its employees, or that it issued wage statements with misstatements, or that it wrongfully converted any amounts.  Lilly Ex. B (Sims Demand) at 46-48; Bailey Ex. K (Sims Compl.) at 8-20.

30. Neither the Sims Demand nor the Sims Complaint refer anywhere to "back pay." Lilly Ex. B (Sims Demand) at 46-48; Bailey Ex. K (Sims Compl.) at 8-20.

31. The Receipt Agreements memorialized TriTech's payments of: (1) $437,603.93 in amounts characterized by certain (but not all) of the agreements as

"back pay" (the "Employee Wage Payments"); and (2) $18,000 ($500 each) in amounts purportedly paid "for the Claims other than back pay being released herein" (the "Employee Release Payments"). Bailey Ex. M (Agreements) at 30-163.

32. The employees who entered into the Release Agreements signed "Overtime Pay Acknowledgements," acknowledging that the Employee Wage Payments represented a payment of "wages." Bailey Ex. N (Pay Acknowledgements) at 164-200.

33. Letters that TriTech sent to its former employees stated that TriTech had "decided to pay you overtime compensation" without condition, and that TriTech "would also like to offer" $500 in return for a release of "any potential claims related to overtime." Bailey Ex. O (Letters) at 201-22.

34. The Employee Wage Payments were made without regard to whether the employees gave up any claims against TriTech. Bailey Ex. O (Letters) at 201-22.

35. After entering into the Receipt Agreements, TriTech entered into a settlement agreement with Sims (the "Sims Settlement"), which the court approved in November 2008. Bailey Ex. P (Stip. and Order) at 223-37.

36. In their Joint Stipulation and Order Approving Dismissal of Plaintiff's Class Claims and Approving Settlement of Plaintiff's Individual and PAGA Claims, TriTech and Sims told the Sims Action court that Sims had abandoned his putative class action claims, but that the putative class members would not be prejudiced "as they remain free to submit their own claims should they believe it is warranted." Bailey Ex. P (Stip. and Order) at 224-25.

37. The Sims Settlement called for TriTech to pay: (1) $500 in "wages" unconditionally paid to Sims, whether or not the settlement was approved (collectively with the Employee Wage Payments, the "Wage Payments"); (2) $500 in consideration for the releases effected by the Sims Settlement; (3) $34,000 in compromise of the "PAGA penalties claimed by Sims" (the "Penalty Payment");

7

and (4) $13,392.00 in attorneys fees and costs (the "Attorneys Fees Payment"). Bailey Ex. P (Stip. and Order) at 228 ¶ 1, 231 ¶ 5, 228 ¶ 2.a, 229 ¶ 2.b, 229 ¶ 2.c.

## CONCLUSIONS OF LAW

After considering the papers in support of and in opposition to Defendant's Motion for Summary Judgment and all other matters presented to the Court, the Court concludes that there is no triable issue of material fact and that Defendant is entitled to judgment as a matter of law, for the following reasons.

<u>The Insured v. Insured exclusion</u>

1. The Sims Claim is a Claim brought by or on behalf of, or in the name or right of, any Insured Person, and accordingly falls within the scope of Policy Exclusion (F), the Insured v. Insured exclusion. Plaintiff asserts that the Sims Claim falls within two exceptions to the Insured v. Insured exclusion. Neither exception applies to the Sims Claim for the following reasons.

2. First, Plaintiff asserts that the Sims Claim falls within the Former Executive Claim exception to the Insured v. Insured exclusion, on the ground that Sims never served as a director, officer, managing member or manager (or functional equivalent) of Plaintiff. In so asserting, Plaintiff interprets this exception to apply not only to claims by former executives, but also to all claims by individuals who have never served as executives. Plaintiff's interpretation is unreasonable. The exception must be interpreted in the context of the Policy as a whole and in light of the common understanding of its language, with an eye to reasonableness and context. *See Cal. Dairies Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1031 (E.D. Cal. 2009) (*citing Bay Cities Paving & Grading, Inc. v. Lawyers Mut. Ins. Co.*, 5 Cal. 4th 854, 867, 21 Cal. Rptr. 2d 691, 698-99 (1993)). Given the context of the title "Former Executive Claims," it would be unreasonable to interpret the exception to apply to a Claim by an Employee who has never served as "a director, officer, managing member or manager (or functional equivalent)." The exception does not apply because Sims was never an executive of Plaintiff.

3.      Second, Plaintiff asserts that the Sims Claim falls within the exception for a Claim for Employment Practices Wrongful Acts, which is defined to include Workplace Torts.  The Sims Claim is a Claim for violations of the California Labor Code and Business and Professions Code for alleged failures to pay overtime, to provide meal and rest breaks, to provide proper pay stubs, to pay wages upon termination, and to record the start and stop times of shifts and breaks.  The Sims Claim does not allege any Employment Practices Wrongful Act or Workplace Tort. *Cal. Dairies*, 617 F. Supp. 2d at 1048-50.

4.      Plaintiff broadly interprets the Sims Claim to match the language of the Workplace Tort definition.  However, the fact remains that Sims did not seek relief for any Workplace Tort.  Considering similar policy provisions, the *California Dairies* court held that when a complaint does not allege any Employment Practices Wrongful Acts and alleges causes of action that do not require proof of any Employment Practices Wrongful Acts, the complaint is not an Employment Practices Claim.  *See* 617 F. Supp. 2d at 1049-50.  The *California Dairies* court's persuasive analysis applies with equal force under the language of the Policy at issue here.  Because the Sims Claim did not allege any Workplace Torts or other Employment Practices Wrongful Acts, and because it alleged causes of action that did not require proof of any Workplace Torts or other Employment Practices Wrongful Acts, the Sims Claim was not a Claim for Employment Practices Wrongful Acts.  As such, the exception to the Insured v. Insured exclusion for such Claims does not apply.

5.      Because the Sims Claim falls within the scope of the Insured v. Insured exclusion, and does not fall within the scope of any exception to that exclusion, the Insured v. Insured exclusion bars coverage for the Sims Claim.  Defendant thus is entitled to summary judgment on Plaintiff's breach of contract claims.

The FLSA exclusion

6.      Defendant moves for summary judgment on the additional ground that

Exclusion (L) in the Policy, the FLSA exclusion, bars coverage for the Sims Claim. The FLSA exclusion bars coverage for any Claim alleging a violation of the Fair Labor Standards Act (the "FLSA") or of any "similar" state laws. Plaintiff asserts that the word "similar" is ambiguous. The Court disagrees. The word "similar" in the exclusion unambiguously causes the exclusion to apply not only to Claims for violations of the FLSA, but also to Claims for violations of any comparable state and local laws. *See Cal. Dairies*, 617 F. Supp. 2d at 1032-40; *Payless Shoesource, Inc. v. Travelers Cos.*, 585 F.3d 1366, 1373-74 (10th Cir. 2009). The purpose of the FLSA exclusion is to prevent insurance coverage for Claims alleging certain labor law violations, whether under federal or state law. *Cal. Dairies*, 617 F. Supp. 2d at 1036; *Farmers Auto. Ins. Assoc. v. St. Paul Mercury Ins. Co.*, 482 F.3d 976, 978-79 (7th Cir. 2007). The word "similar" avoids the need to catalog every state and local law that is similar to the FLSA, which would be inefficient, and further puts insureds on notice that the Policy excludes coverage for violations of state labor laws similar to the FLSA. *Payless*, 585 F.3d at 1375; *Farmers Auto.*, 482 F.3d at 979; *Cal. Dairies*, 617 F. Supp. 2d at 1039. Accordingly, the FLSA exclusion bars coverage for any claims for violations of California Labor Code or Business and Professions Code provisions that are similar to FLSA provisions.

   7. The first and sixth counts of the Sims Complaint seek relief for Plaintiff's failure to pay overtime, under California Labor Code Section 510 and other provisions addressing when and how much overtime must be paid and what remedies are available when an employer fails to comply. *See* CLC §§ 218.5, 218.6, 558, 1194, 2699(g); Cal. Code Regs. tit. 8, § 1140. These provisions are similar to FLSA provisions that likewise address when and how much overtime must be paid and what remedies are available when an employer fails to comply. 29 U.S.C. §§ 207, 216(b); *Cal. Dairies*, 617 F. Supp. 2d at 1040-43. Plaintiff's assertion that the California Labor Code and FLSA overtime wage provisions differ in certain respects is unavailing because the plain meaning of "similar" is satisfied; the

provisions need not be identical. *Cal. Dairies*, 617 F. Supp. 2d at 1039.

8. The second and seventh counts of the Sims Complaint seek relief for Plaintiff's failure to provide adequate breaks and to pay for such breaks, under California Labor Code provisions that address when an employer must provide paid meal and rest breaks and what remedies are available when an employer fails to comply. *See* CLC §§ 226.7, 512, 558 and IWC Order No. 4-2001. These provisions are similar to FLSA implementing regulations that likewise require compensation for certain rest periods. 29 C.F.R. §§ 785.18-19; *Cal. Dairies*, 617 F. Supp. 2d at 1043-44; *see also Payless*, 585 F.3d at 1373 (concluding that CLC and FLSA provisions were "similar" despite differences in treatment of meal and rest breaks).

9. The fifth count of the Sims Complaint seeks relief under California Business and Professions Code Section 17200 for TriTech's failures to pay overtime and to provide paid meal and rest breaks. Any money damages available under this section would be as a direct result of violating the above California Labor Code provisions that are similar to the FLSA. Accordingly, the FLSA is likewise similar to the Section 17200 allegations in the Sims Claim. *See Cal. Dairies*, 617 F. Supp. at 1050-51; *Payless*, 585 F.3d at 1375-76.

10. The FLSA exclusion therefore applies to bar coverage for the first, second, fifth, sixth and seventh counts of the Sims Complaint. The remaining counts likewise are not covered for reasons besides just the Insured v. Insured exclusion, because they seek to recover penalties, which are excluded from the Policy's definition of "Loss." *See Pan Pac. Retail Props., Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 971 (9th Cir. 2006) ("[i]f a lawsuit only sought damages that were uninsurable under the policy, then the insurer would not be liable to reimburse any defense costs spent defending these claims"). Defendant thus is entitled to summary judgment on Plaintiff's breach of contract claims for these additional reasons.

The Definition of "Loss"

11. The settlement of the Sims Claim does not constitute a "Loss" as

defined by the Policy. The Wage Payments and Penalty Payment are not "Loss" because the Policy defines "Loss" to exclude "wages" and "penalties."

12. Plaintiff asserts that the Wage Payments are not "wages" but are a "back pay award[]." In *Jeff Tracy, Inc. v. U.S. Specialty Insurance Co.*, 636 F. Supp. 2d 995 (C.D. Cal. 2009), the court interpreted a nearly identical definition of "Loss" that included "back pay awards" but excluded "wages." The court held that a settlement of a claim for overtime payments represented "wages" and not a "back pay award." Id. at 1004-05. In so ruling, the court reasoned that the term "back pay awards" must be interpreted in light of the surrounding language in the Policy, including the exclusion of "wages." *Id*. at 1005. The court concluded that it would be "nonsensical" for "back pay awards" to refer to unpaid wages, when the definition of "Loss" simultaneously excluded "wages" from coverage. *Id.* The Court agrees with the *Jeff Tracy* court's reasoning and reaches the same conclusion. The Wage Payments are "wages" and not "back pay awards," and accordingly are not "Loss" under the Policy.

13. Plaintiff also asserts that the Wage and Penalty Payments are not "wages" and "penalties" but "settlements." While the first part of the "Loss" definition includes "settlements," the second part excludes "wages" and "penalties." The exclusions in the second part would be entirely superfluous if they did not apply to what otherwise qualifies as "Loss" under the first part, because there would be no need to exclude amounts from the "Loss" definition that even without an exclusion would not have qualified as "Loss." The "Loss" definition unambiguously excludes settlements of wages and penalties. *Jeff Tracy*, 636 F. Supp. 2d 995 (involving settlement of wage claim).

14. Defendant thus is entitled to summary judgment with respect to Plaintiff's contract claims for the Wage and Penalty Payments for the additional reason that those payments are not "Loss" under the Policy.

<u>Plaintiff's Bad Faith Claim</u>

15. Defendant also is entitled to summary judgment with respect to Plaintiff's claim for bad faith, because for the reasons set forth above, the Policy does not provide coverage for the Sims Claim and Defendant's denial of coverage was at least reasonable. *Am. Med. Int'l v. Nat'l Union Fire Ins. Co.*, 244 F.3d 715, 719-20 (9th Cir. 2001); *Griffin Dewatering Corp. v. N. Ins. Co. of N.Y.*, 176 Cal. App. 4th 172, 207-08, 97 Cal. Rptr. 3d 568, 595 (2009).

16. Because all of Plaintiff's claims against Defendant fail as a matter of law, Defendant is entitled to the dismissal with prejudice of Plaintiff's claims.

Dated:  December 13, 2010.

_____
     MANUEL L. REAL
UNITED STATES DISTRICT JUDGE